Filed 7/13/26  P. v. Herrera CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ANGEL ODON HERRERA,<br><br>    Defendant and Appellant. | H052663<br>(Monterey County<br>Super. Ct. No. 22CR006089) |

A jury convicted Angel Odon Herrera of the first degree murder of Javier Moises Mora Jr. (Mora) (Pen. Code,[1] § 187, subd. (a); count 1) and first degree burglary (§ 459; count 2), and found true allegations that Herrera personally discharged a firearm causing great bodily injury in the commission of the murder (§ 12022.53, subd. (d)) and was armed with a firearm in the commission of the burglary (§ 12022, subd. (a)(1)).

The trial court sentenced Herrera to an indeterminate term of 25 years to life in prison on count 1 and a consecutive term of 25 years to life on the firearm enhancement attached to count 1.  Herrera had requested that the court dismiss the firearm enhancement, but the court declined to do so.

---

[1] All further unspecified statutory references are to the Penal Code.

On appeal, Herrera argues that the trial court erred under section 1385, subdivision (c)(2)(C) (section 1385(c)(2)(C)) in declining to dismiss the firearm enhancement.  For the reasons stated below, we disagree and affirm the judgment.

## I.  FACTS AND PROCEDURAL BACKGROUND[2]

*A.  Facts*

At the time of the offense, Herrera was married to K.P.[3]  Mora was Herrera's and K.P.'s mutual friend.  Herrera's and K.P.'s marriage became strained due to, among other reasons, Herrera's extramarital affair and the time he spent out-of-state for work.  K.P. told Herrera that she did not want their marriage or relationship to continue.  Herrera suspected K.P. of having a romantic relationship with Mora and blamed Mora for exacerbating Herrera's and K.P.'s strained relationship.

On the evening of July 11, 2022, Herrera accessed text messages on K.P.'s phone and discovered K.P. and Mora had sent each other sexually explicit messages and images.  Herrera drove to Mora's residence (a detached garage on Mora's parents' property), climbed over the security fence, and confronted Mora over Mora's relationship with K.P.  Herrera had a gun with him.

After K.P. became aware that Herrera had seen her text messages, she went to Mora's residence, woke Mora's family, and alerted them that Herrera might be there.  Mora's mother and one of his sisters discovered Herrera in Mora's room, sensed something was " 'not right,' " and called the police.  Soon

---

[2] We set forth the relevant facts from the trial evidence in the light most favorable to the jury's verdict.  (*People v. Luo* (2017) 16 Cal.App.5th 663, 668, fn. 2; *People v. Campbell* (2020) 51 Cal.App.5th 463, 469.)

[3] We refer to non-law enforcement witnesses by their initials to protect their privacy interests.  (See Cal. Rules of Court, rule 8.90(b)(10).)

thereafter, they heard gunshots from Mora's room. Herrera shot Mora seven times. Mora died at the scene.

*B. Procedural Background*

In January 2023, the Monterey County District Attorney charged Herrera by information with murder (§ 187, subd. (a); count 1) and first degree burglary (§ 459; count 2), with firearm enhancements attached to each count (§§ 12022.53, subd. (d), 12022, subd. (a)(1)). Herrera pleaded not guilty to both counts and denied the enhancements.

In September 2024, after an eight-day trial, the jury returned guilty verdicts on count 1, first degree murder (§§ 187, subd. (a), 189, subd. (a)) and count 2, first degree burglary (§ 459) and found true both firearm enhancements (§§ 12022.53, subd. (d), 12022, subd. (a)(1)).

In October 2024, the trial court conducted the sentencing hearing. Herrera's counsel asked the court to dismiss the firearm enhancement attached to count 1 pursuant to section 1385(c)(2)(C), which identifies as a mitigating factor when application of an enhancement could result in a sentence of over 20 years.

The trial court "recognize[d] its discretion to dismiss the enhancements found true by the jury" and that proof of the presence of one or more of the statutory mitigating circumstances would "weigh[] greatly in favor of dismissing the enhancements unless the [c]ourt finds that the dismissal of the enhancement would endanger public safety." The court defined " '[e]ndanger public safety' " as the presence of "a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others."

The trial court stated that "the only [mitigating] factor that applies is the application of the enhancement would result in a sentence of over 20

years."  The court considered in aggravation Herrera's "cold, calculated, and deliberate first-degree murder" of Mora, "violat[ion]" of K.P.'s trust "by going through her personal messages," the timing of Herrera's confrontation of Mora (Herrera "climbed a fence to break into the victim's bedroom at a time when [Herrera] knew the victim was going to sleep"), the period of time Herrera spent with Mora ("at least 20 minutes") "while expressing his intent to kill him" (Mora), Herrera bringing with him the means to kill Mora, and Herrera's motive for killing Mora ("a desire for revenge, born out of his jealous[]y due to [Mora's] relationship with [Herrera]'s estranged wife").  The court also considered Herrera's involvement in "two assaults on inmates while incarcerated,"[4] which indicated his "continued . . . willingness to engage in violent conduct."  On those grounds, the court found "substantial credible evidence" that dismissal of the firearm enhancement would endanger public safety and declined to do so.

The trial court sentenced Herrera to 25 years to life in prison on count 1 and a consecutive term of 25 years to life in prison on the associated firearm enhancement for an aggregate sentence of 50 years to life.  The court also imposed the middle term of four years in prison on count 2 and a consecutive, one-year term on the firearm enhancement attached to count 2, both stayed both pursuant to section 654.

## II.  DISCUSSION

Herrera contends that the mitigating factor set forth in section 1385(c)(2)(C) applies to his sentence "regardless of whether the rest of [his] sentence is under or over 20 years."  He argues that, because that factor

---

[4] The probation officer's report stated Herrera assaulted other inmates in November 2023 and August 2024 while he was incarcerated at the Monterey County jail.  Herrera did not dispute the probation officer's report of the incidents.

4

applies, the trial court should at sentencing have dismissed the firearm enhancement attached to count 1. Herrera asserts that the court committed legal error by basing its finding that dismissing the enhancement would endanger public safety on his "current dangerousness."[5] Herrera asserts that the record lacks substantial evidence supporting a conclusion that he would present a danger to public safety at the time he would be eligible for parole.

The Attorney General challenges Herrera's interpretation of section 1385(c)(2)(C), arguing that the plain language of the statute states that mitigating circumstance is present only if there is "a causal relationship between the enhancement to be dismissed and the fact that the total sentence exceeds 20 years." The Attorney General reasons that, because Herrera's sentence on count 1 already exceeded 20 years, the consecutive sentence on the firearm enhancement on count 1 did not cause his sentence to exceed 20 years. In addition, the Attorney General contends that Herrera's "current dangerousness" argument misstates the decision in *People v. Gonzalez* (2024) 103 Cal.App.5th 215 (*Gonzalez*).

*A. Legal Principles and Standard of Review*

Section 1385, subdivision (c)(1) provides, "Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute." "In exercising its discretion under [subdivision (c)], the court shall consider and afford great weight to evidence offered by the

---

[5] In the alternative, Herrera argues that his counsel provided ineffective assistance by failing to "address specifically the requirement that the court base a finding of dangerousness on [Herrera]'s dangerousness at the time of his release or the applicability of the 'sentence over 20 years' mitigating factor to him." Because we consider the merits of Herrera's arguments, we do not reach Herrera's ineffective assistance of counsel claim.

5

defendant to prove that any of the mitigating circumstances in [the subparagraphs to subdivision (c)(2)] are present.  Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety.  'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others."  (*Id.*, subd. (c)(2).)

Herrera contends that the following mitigating circumstances applies: "The application of an enhancement could result in a sentence of over 20 years."  (§ 1385(c)(2)(C).)

We review for abuse of discretion the trial court's decision not to strike a sentence enhancement under section 1385.  (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 298 (*Mendoza*); *Gonzalez, supra,* 103 Cal.App.5th at p. 225.)

"The abuse of discretion standard is highly deferential.  When, ' "as here, a discretionary power is statutorily vested in the trial court, its exercise of that discretion 'must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.' " ' " (*Mendoza, supra*, 88 Cal.App.5th at p. 298.)  "It is not enough to show that reasonable people might disagree about whether to strike one or more of [the defendant's] prior convictions." (*People v. Myers* (1999) 69 Cal.App.4th 305, 310 (*Myers*).)  Because we examine a trial court's legal ruling, not its reasoning, we affirm the ruling if it was correct on any theory or ground applicable to the case. (*People v. Camacho* (2022) 14 Cal.5th 77, 124 (*Camacho*); *People v. Zapien* (1993) 4 Cal.4th 929, 976.)

*B. Analysis*

Herrera asserts that the section 1385(c)(2)(C) mitigating factor applies because "[w]here the total sentence following application of an enhancement would be over 20 years, the enhancement 'could result in a sentence of over 20 years,' regardless of whether the rest of the defendant's sentence is under or over 20 years." He maintains that the Court of Appeal's contrary interpretation of the provision in *People v. Torres* (2025) 113 Cal.App.5th 88 (*Torres*) is incorrect.

We are not persuaded. In *Torres*, the trial court sentenced the defendant to 25 years to life for first degree murder and 25 years to life for a firearm enhancement attached to the first degree murder count, to be served consecutively. (*Torres*, *supra*, 113 Cal.App.5th at p. 91.) Torres made an argument similar to that advanced by Herrera here: " 'The use of the word "result" indicates that courts look to the aggregate term once the sentence on the substantive offense and the sentence on the enhancement are accounted for.' In other words, [Torres] interpret[ed] [section 1385(c)(2)(C)] to apply whenever an enhancement is a *component* of a sentence that exceeds 20 years." (*Id.* at p. 92.)

The Court of Appeal disagreed, concluding that Torres's "interpretation is at odds with the clear text of the statute." (*Torres*, *supra*, 113 Cal.App.5th at p. 93.) The court reasoned that "[a] sentence exceeding 20 years could *result* from an enhancement where a sentence of that length arises as a consequence of the enhancement." (*Ibid.*) In other words, the application of the enhancement must "*itself* lead[] to a sentence exceeding 20 years." (*Ibid.*, italics added; *ibid.* ["The word result denotes a causal relationship between the enhancement and a sentence exceeding 20 years."].) We agree with the *Torres* court's interpretation of the statutory language.

7

Here, as in *Torres*, Herrera's sentence on count 1 already exceeded 20 years without the application of the sentence on the firearm enhancement attached to count 1.  The application of the firearm enhancement did not *result* in a sentence of over 20 years.  (*Torres*, *supra*, 113 Cal.App.5th at p. 93.)  Thus, the mitigating circumstance set forth in section 1385(c)(2)(C) does not apply to Herrera as a matter of law.  (*Torres*, at p. 93.)

Herrera does not identify any other mitigating circumstances present in his case.  Because we have concluded section 1385, subdivision (c)(2) does not apply, we affirm the court's judgment on this basis (*Camacho*, *supra*, 14 Cal.5th at p. 124) without considering the trial court's public safety finding.

Even if we were to disregard the plain language of section 1385(c)(2)(C) and assume arguendo the provision applies, we would decide the trial court did not abuse its discretion in declining to dismiss the enhancement.

The trial court's comments at the sentencing hearing do not demonstrate it interpreted section 1385, subdivision (c) in the manner rejected by the appellate court in *Gonzalez*.  The court considered Herrera's current offense, his character, and his incarceration history.  Unlike in *Gonzalez*, there is no affirmative indication in the record that the court either expressly limited its analysis to Herrera's current dangerousness or failed to consider Herrera's dangerousness at the time of possible release.  (Cf. *Gonzalez*, *supra*, 103 Cal.App.5th at p. 224.)  Without such an affirmative showing, Herrera's claim of error fails.  (See *People v. Brugman* (2021) 62 Cal.App.5th 608, 637 (*Brugman*); *Myers*, *supra*, 69 Cal.App.4th at p. 310.)

Although the trial court did not explicitly say that it had considered "the safety valve that exists due to the review by the Board of Parole Hearings" (*Gonzalez*, *supra*, 103 Cal.App.5th at p. 229), because the record is silent as to whether the court considered this factor, we presume the court

correctly applied the law.  (See *Brugman, supra*, 62 Cal.App.5th at p. 637.)

Moreover, while consideration of the Board of Parole Hearings' review process is relevant, it is not dispositive.  (See *Gonzalez*, at p. 228, fn. 10 ["We do not suggest that a trial court is permitted to delegate its judgment regarding a defendant's future threat to public safety to the Board of Parole Hearings."].)

We discern no abuse of discretion in the trial court's decision declining to dismiss the firearm enhancement attached to count 1.

## III.  DISPOSITION

The judgment is affirmed.

_____

Danner, J.

WE CONCUR:

_____

Greenwood, P. J.

_____

Bromberg, J.

**H052663**

*People v. Herrera*